**In re Karen de KLEINMAN, Debtor.**

**Bankruptcy No. 91–B–11913.**

United States Bankruptcy Court,
S.D. New York.

Aug. 25, 1991.

Karen de Kleinman, pro se.

Rubin Baum Levin Constant & Friedman, Paul H. Aloe, New York City, for 647 Fifth Avenue Corp.

## MEMORANDUM DECISION

PRUDENCE B. ABRAM, Bankruptcy Judge.

On July 22, 1991, this court heard and granted a motion to lift the automatic stay and directed the settlement of an order embodying its ruling. Thereafter the movant settled a proposed order. The debtor settled a purported counterorder accompanied by a lengthy submission raising what the debtor views as errors in the court's ruling. The debtor's counterorder did not embody the court's actual ruling but rather embodied the ruling the debtor wished the court to have made.

The court has determined to treat the debtor's counterorder and submission as a motion for reargument. See Bankruptcy Rule 9023. For the reasons which follow, the court adheres to its original ruling and denies the motion for reargument. Concurrently herewith the court has signed the proposed order submitted by the movant.

## FINDINGS OF FACT

On April 27, 1991, Karen de Kleinman ("Debtor"), an individual who is a licensed real estate broker, filed a petition for reorganization under Chapter 11 of the Bankruptcy Code. The petition states that the Debtor is the sole owner of a subchapter S corporation from which she is stated to have earned an income of $250,000 in 1990 from commissions and fees from real estate brokerage activities. Among her activities has been the rental and subleasing of apartments, including several in Olympic Towers, a luxury condominium located at 647 Fifth Avenue in New York City. The motion concerns Olympic Towers Unit 38C (the "Apartment"), a condominium upon which the Debtor had a lease as tenant at the date the Chapter 11 petition was filed.

According to the Debtor's uncontested assertions, the Debtor originally leased the Apartment from 647 Fifth Avenue Corporation (the "Landlord"), the movant, in 1982 and used it as her primary residence until sometime in the late 1980's. During the mid-80's and while she was residing in the Apartment, the Debtor made certain improvements to the Apartment consisting of the installation of mirrors, carpeting and wall coverings. She has stated that these improvements cost approximately $30,000. In 1989, Debtor moved to another apartment. Thereafter and on March 17, 1989 Debtor entered into a new lease for the Apartment for a two-year term commencing June 15, 1989 and subleased the Apartment, with the Landlord's consent, to a third party, David Kay (the "Subtenant"), for the full two year term, which term expired June 14, 1991. It is undisputed that the Debtor made a profit on the sublease.

On or before June 14, 1991, the expiration date of the sublease, the Subtenant vacated the Apartment.

The Landlord asserts, and the Debtor does not dispute, that she has not paid any rent to the Landlord for the Apartment since she filed her Chapter 11 petition in April, and, in addition, that she owes the Landlord the sum of $8,879.20 for unpaid rents dating back to January 1990. The Debtor does not claim that the Subtenant failed to pay all rent due under the sublease.

Because the Debtor claimed that she had continuing rights to the Apartment as a result of the pendency of this case, the Landlord made a motion to lift the automatic stay to permit it to retake possession of the Apartment which motion was filed with the court on July 9, 1991.

The Debtor did not file any written response to the Landlord's motion prior to the scheduled July 22 hearing. The Debtor did appear *pro se* at the hearing. The Debtor does not dispute that the motion was served upon her in a timely and effective manner.

At the hearing, the Debtor requested an adjournment on the grounds that she had not had adequate time to prepare a defense to the motion because she was working on responses to some other unidentified legal papers. The court denied the request for an adjournment because the Bankruptcy Code requires lift stay motions to be heard promptly, the motion concerned an apparently expired lease and the Debtor's choice to use her time to prepare for a matter that was to be heard subsequent to the motion appeared facially inappropriate. Upon a review of the bankruptcy court legal docket it appears that no other motions were or are pending in the bankruptcy court with respect to this Debtor. Upon the court's denial of the request for an adjournment, it became clear that the Debtor, although *pro se* and not an attorney, had done extensive legal research on the motion. The Debtor's main contention at the July 22 hearing was that because the lease for the Apartment had not expired on the date she filed her petition she was entitled to continued use of the Apartment notwithstanding the expiration of the lease term because the profits she was making were essential to her reorganization efforts. In addition, the Debtor argued that a paragraph in the March 17, 1989 lease entitled the Debtor to a renewal of the lease for an additional period. The court denied the Debtor's motion on the grounds that the Debtor's lease had expired, that no non-bankruptcy basis on which she was entitled to an additional term had been shown, and that her bankruptcy filing did not operate to extend the natural term of the lease.

## CONCLUSIONS OF LAW

### Debtor's Request for Adjournment

The Debtor claims that her due process rights were violated because this court refused to grant her request for an adjournment. This court adheres to its ruling that the Debtor offered the court no sufficient reason to warrant an adjournment. The Debtor did not request time to secure counsel, and, upon this court's suggestion that she do so, the Debtor replied "every attorney I have approached wants at least $10,000 retainer and very high hourly rate which I am unable to pay at this time." (Record: 28–29). The Debtor does not dispute that she was served in a timely manner and has had the time to retain counsel. Her decision to forego counsel is a reasoned decision which this court certainly respects and which Debtor is empowered to make. However, once Debtor determined to represent herself *pro se* she undertook the responsibility to comply with the relevant rules of procedural and substantive law. *See Faretta v. California,* 422 U.S. 806, 835–836, 95 S.Ct. 2525, 2541–2542, 45 L.Ed.2d 562 and, therefore, she is to be graced with no special treatment as a reward for her decision to represent herself.

Moreover, it is significant that Debtor, a sophisticated businesswoman, with extensive experience in complex real estate transactions, was in fact well-equipped at the hearing to make intelligent arguments and chart an effective defense. Notably, when challenged, Debtor showed that she

had done considerable preparation and had available to her legal arguments which were discussed at length at the hearing. The Debtor offered no additional purpose which would be served by a delay.

Indeed, the Debtor's arguments with respect to the issue of the ownership of the improvements and her right to remove them at the end of the term of the lease were sufficiently persuasive that the court expressly declined to rule on that issue as the Landlord requested.

This court finds that Debtor was not entitled to an adjournment simply because she is representing herself. Under Bankruptcy Code § 362(e), the bankruptcy court is required to make determinations within thirty days of a request to lift the stay. In this case, the Debtor was given adequate notice of the motion; she had a minimum of 11 days to respond to the motion or secure counsel. Moreover the Debtor's subsequent submissions make plain that she considered the Apartment central to her case and that she was well aware of the June 14, 1991 end of term date. The Debtor offered this court no basis to adjourn the hearing on the motion and her subsequent submissions have not caused the court to conclude that it acted precipitously.

*Core/Non-core Proceeding:*

■ The Debtor has complained in her subsequent papers that the court failed to determine whether the motion was a core or non-core proceeding. She argues that the motion was a non-core matter and maintains that the court had no jurisdiction to hear the motion and that it should be heard and determined in state court. The Debtor is incorrect. A bankruptcy court may hear and determine as core proceedings motions to terminate, annul or modify the automatic stay. See 28 U.S.C. 157(b)(2)(G); *Northern Pipeline Construction Co. v. Marathon Pipeline Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982); *Manville Corp. v. Equity Security Holders' Committee*, 60 B.R. 842 (S.D.N.Y. 1986). There can be no question that, under the admitted facts of this case, the lift stay motion was a core proceeding. It is

true that it is generally stated that the bankruptcy court cannot adjudicate state-created private rights. See 60 B.R. at 849. However, the Debtor does not assert that she is entitled to a renewal of the lease under any non-bankruptcy law and her lease construction argument did not raise even a colorable claim in this court's view.

*Primary Residence:*

■ In her written submissions, the Debtor asserts that because she has been the "continuous tenant" of the Apartment, and had occupied or relet it as a residence (p. 2), that the court improperly "attempted to dispose of it as nonresidential property." (p. 18). While the Debtor asserts that the court was wrong in implicitly dealing with the Apartment as if it were non-residential real property, the Debtor has failed to show any difference in result which would be effected by this designation.

The Debtor has not asserted a sufficient property interest in the Apartment to even trigger the question of whether the lease should be deemed rejected because she never sought to assume the lease in a timely fashion pursuant to § 365(d)(2)(4). Nor must the court determine whether Code § 362(b)(10), which exempts certain actions with respect to non-residential real property from the scope of the automatic stay, required the Landlord to make a lift stay motion since the motion was made. These questions are simply of no moment. The undisputed circumstances remain that the Debtor's lease expired, and she claims no statutory or other non-bankruptcy right which would entitle her to renewal lease beyond the lease construction argument which this court has rejected. Although the Debtor has insisted that the rehabilitative interests of the estate should compel a different result, the hard facts are that the lease has ended and there is no legal requirement under which the Landlord must offer her a renewal lease.

RIGHT OF FIRST REFUSAL

■ Paragraph 69 of the March 17, 1989 lease reads as follows:

"If at any time during the term of this Lease, Landlord shall receive an offer

acceptable to Landlord to lease the Unit upon the expiration of this Lease, provided Tenant is not in default under the terms of this Lease, Landlord shall send to Tenant a copy of the proposed lease and notify Tenant of the intention of the Landlord to accept the same. Provided Tenant is not in default under the terms of this Lease, Tenant shall have the right, within ten (10) days, in writing, subject to the approval of the Condominium, and to lease the Unit for the rental, term and upon the terms and conditions therein specified. If the Tenant shall not so elect within the ten (10) day stated period or does not respond to Landlord's original notice, Landlord may then lease the Unit to the proposed new tenant. This provision shall not apply to any lease between the Landlord, its affiliates or subsidiaries or entities controlled by Landlord. In the event Tenant fails to timely exercise such right of first refusal in connection with a proposed lease, then such right shall be deemed extinguished."

The Debtor claims that the provisions of Paragraph 69 granted her the option to renew the lease upon its natural termination in June 1991. This court disagrees.

Paragraph 69 merely entitled Debtor to a right to obtain a new lease should the Landlord procure a new tenant *at any time during the term of the Debtor's lease* with the Landlord and only if the Debtor was not then in default under the terms of the lease. This "right of first refusal" contemplated that the Landlord was prohibited from accepting a tenant, which it had located *during the term of the prior lease*, until it had first offered the Debtor the option to lease on the identical terms. Translated into business terms, should the Debtor choose to exercise her right and lease the Apartment, she would undertake the risk of finding a subtenant who would agree to a sublease upon more favorable terms than her agreement with the Landlord. If she could not, then there would be no "spread" and no profit to her. If the Landlord chose not to transact with the Debtor any longer, it would be required to let the natural lease term expire in order to

do so. By no reading of Paragraph 69 can one construe that the Landlord was mandated to offer the Debtor a renewal lease, or put differently, that the Landlord was precluded from declining to deal with the Debtor at the end of the term of the lease. And the Debtor does not assert that the Landlord had found a new tenant *during the lease period* and denied Debtor her right of first refusal. In any event the Debtor was in default both pre- and post-petition by virtue of the non-payment of more than a *de minimus* amount of rent.

Nevertheless, Debtor insists that because she had a leasehold interest at the time of filing, that she had the right to have the court create a lease in her favor and force the Landlord to accept it. Contrary to the Debtor's understanding of Code §§ 362 and 541, the automatic stay does not extend to the Debtor a property right which she does not already have. The Debtor's leasehold interest ended upon the termination of the lease on June 14, 1991. The Debtor cites various bankruptcy cases which focus on whether the debtor had rights in property on the date the petition was filed. The Debtor takes these cases to mean that once such an interest is found to exist on the filing date that the property will remain property of the estate for the duration of the case. Unfortunately, the Debtor has misunderstood the purport of this line of cases. Bankruptcy does not create longer leases or leases with different rent terms than agreed to between the parties prior to bankruptcy however much a debtor would be benefitted. As this court put it at the July 22 hearing, it would help the Debtor's reorganization if she owned a McDonald's franchise. But she does not, and the court cannot create one for her simply because it would be beneficial to her efforts to reorganize.

The Debtor's motion for rehearing is denied and the court adheres to its original determination.