*By order of the Bankruptcy Appellate Panel, the precedential effect
of this decision is limited to the case and parties pursuant to
6th Cir. BAP LBR 8024-1(b). See also 6th Cir. BAP LBR 8014-1(c).*

File Name: 20b0005n.06

# BANKRUPTCY APPELLATE PANEL

## OF THE SIXTH CIRCUIT

IN RE: RODNEY THOMAS RIDDLE,

> *Debtor*.

_____

RODNEY THOMAS RIDDLE,

> *Appellant*,

> No. 19-8022

*v*.

MARK A. GREENBERGER, Trustee; ANDREW R. VARA,
United States Trustee, Region 9,

> *Appellees*.

Appeal from the United States Bankruptcy Court
for the Southern District of Ohio at Cincinnati.
No. 1:19-bk-10052—Beth A. Buchanan, Judge.

Decided and Filed: June 29, 2020

Before: CROOM, MASHBURN and WISE, Bankruptcy Appellate Panel Judges.

_____

## COUNSEL

_____

**ON BRIEF:** Amy L. Good, UNITED STATES DEPARTMENT OF JUSTICE, Cincinnati,
Ohio, for Federal Appellee. Rodney Thomas Riddle, Cincinnati, Ohio, pro se.

_____

## OPINION

_____

JIMMY L. CROOM, Bankruptcy Appellate Panel Judge. The bankruptcy court
dismissed the *pro se* debtor's chapter 7 bankruptcy case pursuant to 11 U.S.C. § 707(a) based on

a finding of bad faith and also concluded that the debtor's actions demonstrated an abuse of the bankruptcy process. Accordingly, the bankruptcy court imposed a three-year bar to refiling pursuant to 11 U.S.C. §§ 105(a) and 349(a). The debtor filed this timely appeal seeking reversal.

The debtor also asks the Panel to reopen a prior bankruptcy case, case number 18-14280, so he can pay a property tax bill and reclaim certain property. The bankruptcy court dismissed that case on November 29, 2018, for failure to obtain pre-petition credit counseling as required by 11 U.S.C. § 109(h). The debtor filed motions to reconsider the dismissal on December 14, 2018, and January 3, 2019. The bankruptcy court denied both motions by orders entered December 30, 2018, and January 9, 2019. The debtor did not appeal the dismissal order or the orders denying his motions for reconsideration. As such, his request for relief from those orders is untimely and will not be addressed.

## ISSUES ON APPEAL

Whether the bankruptcy court erred in (1) dismissing the debtor's bankruptcy case pursuant to 11 U.S.C. § 707(a) based on a finding of bad faith and (2) imposing a three-year bar to refiling pursuant to 11 U.S.C. §§ 105(a) and 349(a).

## JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal. The United States District Court for the Southern District of Ohio has authorized appeals to the Panel, and no party has timely elected to have this appeal heard by the district court. 28 U.S.C. § 158(b)(6), (c)(1). A final order of the bankruptcy court may be appealed as of right pursuant to 28 U.S.C. § 158(a)(1). "Orders in bankruptcy cases qualify as 'final' when they definitively dispose of discrete disputes within the overarching bankruptcy case." *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 586 (2020) (citing *Bullard v. Blue Hills Bank*, 575 U.S. 496, 501, 135 S. Ct. 1686 (2015)). An order dismissing a bankruptcy case is the very definition of a final order. *In re Ramey*, 558 B.R. 160, 162 (B.A.P. 6th Cir. 2016) (citation omitted); *see also Indus. Ins. Servs., Inc. v. Zick (In re Zick)*, 931 F.2d 1124, 1126 (6th Cir. 1991)

(an order dismissing a bankruptcy case pursuant to 11 U.S.C. § 707(a) is a final order).**1** A bankruptcy court's order dismissing a case with a bar is also a final order for purposes of appeal. *Cusano v. Klein* (*In re Cusano*), 431 B.R. 726, 730 (B.A.P. 6th Cir. 2010).

"Dismissal of a bankruptcy case is reviewed for an abuse of discretion." *Riverview Trenton R.R. Co. v. DSC, Ltd.* (*In re DSC, Ltd.*), 486 F.3d 940, 944 (6th Cir. 2007) (citation omitted). The decision to bar a debtor from subsequent filings is also reviewed under the abuse of discretion standard. *Cusano*, 431 B.R. at 730 (citing *Marshall v. McCarty* (*In re Marshall*), 407 B.R. 359, 362 (B.A.P. 8th Cir. 2009)). "An abuse of discretion occurs only when the [trial] court relies upon clearly erroneous findings of fact or when it improperly applies the law or uses an erroneous legal standard." *Kaye v. Agripool, SRL* (*In re Murray, Inc.*), 392 B.R. 288, 296 (B.A.P. 6th Cir. 2008) (citation omitted). "An abuse of discretion is defined as a definite and firm conviction that the court below committed a clear error of judgment." *Mayor of Baltimore, Md. v. West Virginia* (*In re Eagle-Picher Indus., Inc.*), 285 F.3d 522, 529 (6th Cir. 2002) (internal punctuation and citations omitted). "The question is not how the reviewing court would have ruled, but rather whether a reasonable person could agree with the bankruptcy court's decision; if reasonable persons could differ as to the issue, then there is no abuse of discretion." *Id.* (citations omitted). The bankruptcy court's "decision and decision-making process need only be reasonable." *Cusano*, 431 B.R. at 730 (internal quotation marks and citations omitted).

A finding of fact "is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573, 105 S. Ct. 1504 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S. Ct. 525 (1948)). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* at 574 (citations omitted).

---

**1**Although the Court in *Zick*, 931 F.3d 1124, did not specifically state that the order dismissing the case under § 707(a) was a final order, it treated it as such.

**FACTS**

Rodney Riddle ("Debtor") is a serial bankruptcy filer in the Southern District of Ohio. Since 2011, he has filed five *pro se* petitions for bankruptcy relief with the court. His third case was dismissed on June 18, 2015, with a three-year bar to refiling. Upon the expiration of the bar, the Debtor filed his fourth case, a chapter 13 which was dismissed on November 29, 2018, for failing to obtain pre-petition credit counseling.

The Debtor's most recent filing is case number 19-10052. He commenced this case by filing a skeletal chapter 7 petition on January 8, 2019. On that date, Mark A. Greenberger ("Chapter 7 Trustee") was appointed as the chapter 7 trustee in the Debtor's case.

The Debtor filed his bankruptcy schedules and statements on January 22, 2019. On Schedule A/B, the Debtor listed his residence as 1140 Gideon Lane, Cincinnati, Ohio ("Gideon Lane Property"). He valued the property at $300,000.00 and indicated that the portion he owned was valued at $150,000.00. He stated that he owned the property in fee simple and that the property was community property.[2] He claimed 100% of the fair market value of the Gideon Lane Property as exempt on Schedule C. The Debtor indicated on his Statement of Financial Affairs ("SOFA") that Wells Fargo Bank, N.A ("Wells Fargo") had foreclosed on the Gideon Lane Property on June 30, 2018.

The Debtor also disclosed 11 parcels of investment property on Schedule A/B ("Investment Properties"). He listed the cumulative value for these properties at $275,000.00 and indicated the value of his interest was $140,000.00. The Debtor indicated that he owned the properties in fee simple and that the properties were community property.[3]

On his Statement of Intent, the Debtor indicated that he intended to retain the Gideon Lane Property and the Investment Properties. For the Gideon Lane Property, he checked the box "Retain the property and (explain)." He offered no explanation for how he was going to retain

---

[2]On Schedule H, the Debtor indicated he had lived in a community property state within the 8 years prior to filing for bankruptcy relief. He listed the community property state as Ohio. Ohio is not a community property state. *State v. Garber*, 709 N.E.2d 218, 219 (Ohio Ct. App. 1998).

[3]*Ibid.*

the property. For the Investment Properties, the Debtor indicated he was going to redeem the properties and enter into a reaffirmation agreement for them. He also checked the box "Retain the property and (explain)." Again, he did not provide an explanation for his plan of retention.

The Debtor listed two automobiles on Schedule A/B: a 2005 Mercedes ML350 and a 2006 Mercedes E350 valued at $4,000.00 each. He also listed $1,000.00 in household goods, $1,000.00 in electronics, $100.00 in cash, $900.00 in checking accounts, and $11,000.00 in investment accounts.

The Debtor only listed one creditor on his schedules: Hamilton County, Ohio. Hamilton County was listed on Schedule D with a secured claim of $575,000.00 for unpaid property taxes on the Gideon Lane Property and the Investment Properties.[4]

The Debtor listed Dionne Y. Riddle ("Ms. Riddle") as his codebtor on Schedule H. He listed her address as the Gideon Lane Property. Subsequently in the case, the Debtor revealed that Ms. Riddle had moved to Akron, Ohio five years before.

The Debtor listed monthly income of $1,500.00 from his job as property manager for Seasons Real Estate on Schedule I. He did not list any deductions from his income for taxes, insurance, or otherwise. He did not disclose any business interests in his schedules or statements.

The Debtor listed monthly expenses of $630.00 on Schedule J. His expenses did not include any cost for housing. In response to question 24, "Do you expect an increase or decrease in your expenses within the year after you file this form," the Debtor answered "yes. Housing Expense. Presently in Foreclosure." (Sched. J, Bankr. Case No. 19-10052, ECF No. 17 at 36.)

In Part 1 of his SOFA, the Debtor stated that he was currently separated from Ms. Riddle; however, in Part 4, he indicated he had been involved in a divorce proceeding within the year prior to filing for bankruptcy relief.

---

[4]On his Summary of his Assets and Liabilities, the Debtor listed total liabilities of "$48,000.00/$42,000.00." It is unclear where these figures come from. The only debt listed on any of his schedules is the $575,000.00 secured debt held by Hamilton County, Ohio. (*See* Summ. Of Assets & Liabs., Bankr. Case No. 19-10052, ECF No. 17 at 1.)

On February 7, 2019, the Chapter 7 Trustee sent the Debtor a letter about several issues in the case ("Trustee Letter"). First, he instructed the Debtor to immediately advise him in writing of which debts he was seeking to discharge that were not dealt with in his prior cases. Next, he asked the Debtor to send copies of certain documents to him for review prior to the § 341 meeting of creditors ("§ 341 Meeting") scheduled for February 21, 2019. These documents included copies of federal and state tax returns, wage statements, checking account statements, investment account statements, mortgages and deeds for all properties owned by the Debtor in the prior five years, and "If you are divorced, a copy of your Divorce Decree."[5] (Trustee Letter, Bankr. Case No. 19-10052, ECF No. 24-1 at 1.) He also asked the Debtor to bring copies of his driver's license, his social security card, and the titles for the two Mercedes vehicles to the § 341 Meeting. He then instructed the Debtor to review his bankruptcy schedules "carefully" because "some answers may require amendments. (i.e., Answer. 'no clothing')." (*Id.*) He closed the letter by informing the Debtor that "[f]ailure to comply with the instructions in this letter may result in the Trustee seeking a dismissal of" the case. (*Id.*)

The Debtor did not make the required disclosures prior to the § 341 Meeting, nor did he provide any of the documents the Chapter 7 Trustee requested. At the § 341 Meeting, the Chapter 7 Trustee advised the Debtor that there appeared to be several inaccuracies on his schedules, including the Debtor's failure to list a child support obligation and four vehicles. Additionally, the schedules identified the Debtor as separated from his wife, when in fact the state court had issued a divorce decree in December 2018, shortly before Debtor commenced his bankruptcy case on January 8, 2019. Also, the Chapter 7 Trustee indicated that it appeared that the Debtor had understated his income and expenses. He warned the Debtor that he would seek dismissal of the case if the errors were not corrected. For these reasons, the Chapter 7 Trustee continued the § 341 Meeting.

Rather than comply with the Chapter 7 Trustee's requests, the Debtor filed a motion to convert his case to chapter 13 on March 1, 2019. He stated he wanted to surrender one parcel of

---

[5]In his motion to dismiss, the Chapter 7 Trustee asserted that these documents were "the usual customary paperwork that all Trustees are required to review prior to the 341 Meeting." (Ch. 7 Trustee's Mot. to Dismiss, Bankr. Case No. 19-10052, ECF No. 33 at 1.)

the Investment Properties to his sister and cure arrearages and past due taxes on his other real property through a chapter 13 plan.[6]

The Chapter 7 Trustee objected to the motion to convert on March 6, 2019, identifying many inaccuracies and omissions on the Debtor's schedules and discussing his history of serial filings. Following a hearing on April 4, 2019, the court denied the Debtor's motion based on his inability to present a feasible plan of reorganization.

The Chapter 7 Trustee filed a notice of abandonment for the Gideon Lane Property on April 8, 2019. The Trustee asserted that the Hamilton County auditor valued the property at $259,440.00 and that there was no equity over and above the mortgage held by Wells Fargo.[7]

The Debtor filed an objection to the abandonment on April 19, 2019. He asserted that similar properties in the same subdivision were selling for between $425,000.00 and $580,000.00. As such, the Debtor asserted there was equity in the Gideon Lane Property and abandonment was improper.

On April 17, 2019, the Chapter 7 Trustee filed a motion to dismiss the Debtor's case based on his failure to carry out his statutory duties under the Bankruptcy Code and his failure to cooperate. In support of this motion, the Chapter 7 Trustee cited the Debtor's failure to provide the documents requested in the Trustee Letter and to submit to an examination under oath at the § 341 Meeting. He also cited the inaccuracies in the Debtor's schedules, which included the Debtor's failure to accurately reflect the status of his divorce, to list his child support obligation, and to accurately disclose his tax obligations, income, and personal property.

On April 19, 2019, the Office of the United States Trustee ("US Trustee") filed a motion to dismiss the Debtor's case with a three-year bar to refiling pursuant to 11 U.S.C. §§ 349(a),

---

[6]The state court had awarded the Investment Properties to Ms. Riddle in the divorce decree.

[7]Wells Fargo filed a motion for relief from the automatic stay on June 20, 2019. According to this motion, Wells Fargo held the mortgage on the Gideon Lane Property at the time of the foreclosure and was the successful bidder at a sheriff's sale on June 30, 2016. The sale was confirmed on June 26, 2018, and the Sheriff's Deed conveying the Gideon Lane Property to Wells Fargo was recorded on September 25, 2018. Wells Fargo asserted that the Debtor has continued to reside at the Gideon Lane Property since the June 2016 sale. The bankruptcy court entered an order granting Wells Fargo's motion on August 27, 2019; however, because the case had already been dismissed by that time, the court vacated that order on October 1, 2019.

105(a), and 707(a), and Federal Rule of Bankruptcy Procedure 1017. The US Trustee asserted that the Debtor's failure "to provide complete and accurate documents to the" Chapter 7 Trustee and his failure to "cooperat[e] in a complete and accurate meeting of creditors" constituted cause for dismissal under 11 U.S.C. § 707(a). (US Trustee Mot. to Dismiss, Bankr. Case No. 19-10052, ECF No. 34 at 2.) Based on the "Debtor's failure to comply and prosecute this case, and his repeated filings and prior cases," the US Trustee also urged the bankruptcy court to prohibit the Debtor from seeking bankruptcy relief for a period of three years pursuant to 11 U.S.C. §§ 105(a) and 349(a). (*Id.* at 1.) The US Trustee argued that the Debtor was a serial filer who had filed his cases in bad faith "without any intention of complying with the requirements of the Code, and to thwart another foreclosure sale" of the Gideon Lane Property. (*Id.* at 4.)

The Debtor filed an answer to the motions to dismiss on May 24, 2019. He asserted that his intention in seeking bankruptcy relief was pure, and that he was merely trying to sort out his financial and marital dissolution issues. He also objected to the three-year bar against re-filing. He asserted that he had tried to comply with the Chapter 7 Trustee's request for information when he sought to convert to chapter 13. He also wanted the opportunity to increase his income and rectify the problems with his real property through the bankruptcy process.

The bankruptcy court conducted an evidentiary hearing on the motions to dismiss and the Debtor's answer thereto on July 2, 2019. The Chapter 7 Trustee testified about the inaccuracies in the Debtor's schedules and his failures to comply with his obligations under the Code. The Debtor did not cross-examine the Chapter 7 Trustee. The bankruptcy court allowed the Debtor to take the stand and present a narrative as his direct examination, and the Chapter 7 Trustee cross-examined him.

After the closing statements, the court took a brief recess and then issued an oral ruling, which was memorialized by its July 19, 2019 "Memorandum Decision Granting (i) United States Trustee's Motion to Dismiss with Request for Three Year Bar to Refiling and (ii) Trustee Mark Alan Greenberger's Motion to Dismiss" ("Opinion") and related "Order Granting (i) United States Trustee's Motion to Dismiss with Request for Three (3) Year Bar to Re-Filing [Docket

Number 34]; and (ii) Trustee Mark Alan Greenberger's Motion to Dismiss [Docket Number 33]."

In the Opinion, the bankruptcy court's Findings of Fact begin with a brief summary of the Debtor's previous bankruptcy filings:

1) On October 14, 2011, Mr. Riddle filed a Chapter 7 case [Case No. 11-16241]. The UST brought an adversary complaint to deny Mr. Riddle's discharge for false oaths in connection with his bankruptcy case. This Court granted the UST summary judgment and denied Mr. Riddle's discharge for failure to disclose, in his schedules, his ownership interest in his residence at 11440 Gideon Lane, a transfer of property located at 5946 Woodmont Ave that occurred a week prior to the petition filing date, and certain other business interests [See Adv. Proc. No. 11-1209, Docket Number 22]. The bankruptcy case was closed on January 9, 2013.

2) On August 26, 2014, Mr. Riddle filed another Chapter 7 case [Case No. 14-13583]. The case was dismissed October 15, 2014 upon the UST's filing of a motion to dismiss for abuse. Mr. Riddle did not respond to the motion. In the order of dismissal, this Court determined that the scheduled debts were not eligible for discharge because a discharge of those debts was denied in the prior case. [See Case No. 14-13583, Docket Number 43].

3) On February 23, 2015, Mr. Riddle filed his third Chapter 7 case since 2011 [Case No. 15-10588]. Again, the UST filed a motion to dismiss, this time including a request that Mr. Riddle be barred from refiling a bankruptcy case for three years on the grounds that Mr. Riddle was ineligible for a discharge of the debts requested because he was denied a discharge of this [sic] debts in the 2011 case. As such, the UST asserted that the only purpose for the filing [sic] the case was to improperly frustrate a foreclosure sale of Mr. Riddle's residence that had been scheduled for February 26, 2015. Mr. Riddle did not respond to the UST's motion to dismiss. On June 18, 2015 this Court dismissed the case and imposed the three-year bar to refiling because of Mr. Riddle's repeat filings [Case No. 15-10588, Docket Number 36].

4) The three-year bar ended on June 19, 2018. On November 27, 2018, Mr. Riddle filed his fourth bankruptcy case since 2011, this time a chapter 13 case [Case No. 18-14280]. Mr. Riddle's case was dismissed for the failure to show exigent circumstances necessary to request an extension of time for completing the required credit counseling course [Case No. 18-14280, Docket Number 14]. The dismissal occurred on November 29, 2018.

5) Within two months, Mr. Riddle filed his fifth and current case.

(Op., Bankr. Case No. 19-10052, ECF No. 60 at 3-4.)

The court then explained the legal basis for its decision to dismiss the Debtor's case with prejudice.  The court began by stating that 11 U.S.C. § 707(a) allows a chapter 7 bankruptcy case to be dismissed "for cause" and that a debtor's bad faith may serve as grounds for such dismissal.  The court recognized that a finding of bad faith under 11 U.S.C. § 707(a) "should not be taken lightly."  (*Id.* at 5 (citing *Indus. Ins. Servs., Inc. v. Zick* (*In re Zick*), 931 F.2d 1124, 1129 (6th Cir. 1991).)  The court then listed the objective factors used in determining whether to dismiss a case under 11 U.S.C. § 707(a).  The court also stated that "when egregious facts are demonstrated," sanctions may be imposed pursuant to 11 U.S.C. §§ 105(a) and 349(a).  (*Id.* at 6.)

After reviewing the relevant caselaw, the bankruptcy court concluded that "many of the factors cited in other cases to support a bad faith dismissal are evident in this case."  (*Id.*)  These factors included the Debtor's failure to cooperate with the Chapter 7 Trustee by providing the requested documents; his failure to satisfy his statutory duties under the Bankruptcy Code; his failure to revise inaccuracies in his schedules and SOFA; his failure to value certain assets at the same level they were in the divorce decree; his failure to disclose certain assets, liabilities, income and expenses; and the history of his current and previous bankruptcy cases.  The bankruptcy court also found that the Debtor's behavior in this case mirrored his behavior in his 2011 case wherein he was denied a discharge pursuant to 11 U.S.C. § 727.  In addition, the Debtor filed his two most recent bankruptcy cases in an effort to stall his eviction from the Gideon Lane Property without making any effort to satisfy the outstanding obligations associated therewith, including the monthly mortgage payment.  The June 2016 Sheriff's sale of the Gideon Lane property foreclosed the possibility that the Debtor could reaffirm a mortgage in chapter 7 or cure and maintain a mortgage in chapter 13.

In closing, the court noted that the Debtor had "stated that his purpose in filing this chapter 7 case was because the bankruptcy court was the only authority he could turn to in order to protect himself from mistakes he believes were made by the domestic relations court."  (*Id.* at 7.)  The bankruptcy court said this "purpose is misplaced."  (*Id.*)  The bankruptcy court concluded that the Debtor's actions in his current and prior cases demonstrated an abuse of the bankruptcy process and constituted sufficient cause to grant the motions to dismiss pursuant to

11 U.S.C. § 707(a) and impose a three-year bar to refiling pursuant to 11 U.S.C. §§ 105(a) and 349(a).

The Debtor filed his timely notice of appeal on July 29, 2019.

## DISCUSSION

### I.        11 U.S.C. § 707(a)

The first issue in this appeal is whether the bankruptcy court erred in dismissing the Debtor's case pursuant to 11 U.S.C. § 707(a).  Section 707(a) provides as follows:

> (a)    The court may dismiss a case under this chapter only after notice and a hearing and only for cause, *including--*
>
> (1)    unreasonable delay by the debtor that is prejudicial to creditors;
>
> (2)    nonpayment of any fees or charges required under chapter 123 of title 28; and
>
> (3)    failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521(a), but only on a motion by the United States trustee.

11 U.S.C. § 707(a) (emphasis added).  "The determination of whether the record establishes 'cause' to dismiss a case under 11 U.S.C. § 707(a) is committed to the sound discretion of the Court."  *In re Rahim*, 442 B.R. 578, 581 (Bankr. E.D. Mich. 2010) (citing *Indus. Ins. Servs., Inc. v. Zick (In re Zick)*, 931 F.2d 1124, 1126 (6th Cir. 1991)).

Section 707(a)'s examples of cause justifying dismissal is not an exhaustive list.  *Zick*, 931 F.2d at 1126.  It is well-settled in the Sixth Circuit that a debtor's lack of good faith may also serve as cause for dismissal under § 707(a).  *Id.* at 1126-27 (collecting cases).  Dismissal based on a debtor's bad faith, however, "should be confined carefully and is generally utilized only in those egregious cases[.]"  *Id.* at 1129.  Section 707(a) "is geared toward maintaining the integrity of the bankruptcy process."  *In re Weeks*, 306 B.R. 587, 589 (Bankr. E.D. Mich. 2004) (citation omitted).  It also works to serve the principle that bankruptcy relief should be limited to the honest but unfortunate debtor.  *Zick*, 931 F.2d at 1128 (citation omitted).

There is no single test for determining whether a bankruptcy petition was filed in good faith and "[t]he facts required to mandate dismissal based upon a lack of good faith are as varied as the number of cases." *Zick*, 931 F.2d at 1127 (citations omitted). The inquiry is fact-specific and must be made on a case-by-case basis under a totality of the circumstances. *In re Spagnolia*, 199 B.R. 362, 365 (Bankr. W.D. Ky. 1995) (citing *Zick*, 931 F.2d at 1127). As the Sixth Circuit has noted, the "smell test" has "particular merit." *Zick*, 931 F.2d at 1127 (citing *Morgan Fiduciary, Ltd. v. Citizens & S. Int'l Bank*, 95 B.R. 232, 234 (S.D. Fla. 1988) ("Any trial judge will inevitably come to the conclusion on occasion that a certain case or claim or defense has a bad odor. Simply put, a matter smells. Some smell so bad they stink.")). The smell test requires a court to examine a number of factors to determine whether a debtor acted in good faith in seeking bankruptcy relief. These factors include:

1.  The debtor reduced his creditors to a single creditor in the months prior to filing the petition.

2.  The debtor failed to make lifestyle adjustments or continued living an expansive or lavish lifestyle.

3.  The debtor filed the case in response to a judgment, pending litigation, or collection action; there is an intent to avoid a large single debt.

4.  The debtor made no effort to repay his debts.

5.  The unfairness of the use of Chapter 7.

6.  The debtor has sufficient resources to pay his debts.

7.  The debtor is paying debts to insiders.

8.  The schedules inflate expenses to disguise financial well-being.

9.  The debtor transferred assets.

10. The debtor is over-utilizing the protection of the Code to the unconscionable detriment of creditors.

11. The debtor employed a deliberate and persistent pattern of evading a single major creditor.

12. The debtor failed to make candid and full disclosure.

13. The debts are modest in relation to assets and income.

14. There are multiple bankruptcy filings or other procedural "gymnastics."

*Spagnolia*, 199 B.R. at 365 (citing *Zick*, 931 F.2d at 1124) (other citations omitted). Although one factor by itself is rarely sufficient to support dismissal under § 707(a), a combination of the

factors justifies a "for cause" dismissal. *Id.* (citations omitted); *see also Cusano v. Klein* (*In re Cusano*), 431 B.R. 726, 735 (B.A.P. 6th Cir. 2010) ("While multiple filings are not, in and of themselves, improper or indicative of bad faith, a history of multiple filings and dismissals may be construed as bad faith." (citation omitted)). "The factors relied on by the bankruptcy court are essential in appellate review, and should be set out in the bankruptcy court's decision." *Zick*, 931 F.2d at 1128 (citation omitted).

In the case on appeal, the bankruptcy court lists a number of factors in support of its conclusion that the Debtor lacked good faith in seeking chapter 7 relief. These factors include:

1. Debtor's failure to cooperate with the Chapter 7 Trustee by providing the documents requested in the Trustee Letter;

2. Debtor's failure to submit to an examination under oath at the § 341 Meeting;

3. Debtor's failure to disclose the December 2018 divorce decree;

4. Debtor's failure to list all vehicles owned by the Debtor;

5. Debtor's failure to list his child support obligation;

6. Debtor's failure to list the rental income and expenses for the Investment Properties;

7. Debtor's undervaluation of assets (based on values given in the divorce decree);

8. Debtor's failure to list the mortgage for the Gideon Lane Property or to make payments thereon;

9. Debtor's claim that the Gideon Lane Property was salvageable in a chapter 7 bankruptcy proceeding after agreeing it was "beyond foreclosure" in state court;

10. Debtor's inability to obtain relief from the divorce decree and/or child support order in bankruptcy court;

11. Debtor's actions in the current case mirrored his actions in his 2011 case in which he was denied a discharge under 11 U.S.C. § 727;

12. The 2018 and 2019 bankruptcy cases appeared to have been filed in an attempt to forestall the Debtor's eviction from the Gideon Lane Property; and

13. The history of the Debtor's bankruptcy filings since 2011.

Implicit in the court's decision was the conclusion that the Debtor was not the honest, but unfortunate debtor who deserved relief under the Bankruptcy Code.

Except as noted below, the Debtor does not challenge the bankruptcy court's factual findings. Rather, in his brief on appeal, the Debtor asserts that the bankruptcy court "decided incorrectly" his "[h]istory of filings" because the Chapter 7 Trustee "twist[ed] and commingl[ed] old cases and this case." (Appellant Br. at 1.) He also states that he believes

> the court viewed my history as abusive, unjustly, as I have explained some of the history, and the reasons behind the filings. I would like for the court to view them as coincidental, and remember that I am a prose [sic] filer, and that minor mistakes has [sic] been made, but nothing malicious, or evading.

(*Id.* at 6.) He claimed that his multiple filings "partly … happened because I was in prison." [8] (*Id.* at 5.) Only one of the Debtor's filings occurred while he was in prison. His other cases were dismissed for a variety of other reasons that the court discussed in the Opinion.

"It is well established that … *pro se* pleadings should be construed more liberally than pleadings drafted by lawyers." *Williams v. Browman*, 981 F.2d 901, 903 (6th Cir. 1992) (citing *Dunn v. White,* 880 F.2d 1188, 1190 (10th Cir. 1989)). However, this less stringent standard does not apply to every aspect of a case. The Sixth Circuit has long held that

> while *pro se* litigants may be entitled to some latitude when dealing with sophisticated legal issues, acknowledging their lack of formal training, there is no cause for extending this margin to straightforward procedural requirements that a layperson can comprehend as easily as a lawyer.

*Jourdan v. Jabe*, 951 F.2d 108, 109 (6th Cir. 1991). In the bankruptcy context, appearing before a court in a *pro se* status does not alleviate a debtor of the procedural and substantive duties imposed by the Bankruptcy Code and Rules. *In re de Kleinman*, 136 B.R. 69, 71 (Bankr. S.D.N.Y. 1991) (citing *Faretta v. California,* 422 U.S. 806, 835-36, 95 S. Ct. 2525 (1975).

The Debtor was given numerous opportunities to produce missing documents to the Chapter 7 Trustee and to comply with his statutory duties. The Chapter 7 Trustee advised the Debtor in person and in writing on more than one occasion of the inaccuracies that needed to be corrected and the documents that needed to be produced. It appears the Debtor made little to no effort to comply with the Chapter 7 Trustee's requests. The Bankruptcy Code requires a debtor

---

[8]At the time he filed his 2014 case, the Debtor was in federal prison. (Appellant Br. at 2.)

to accurately list his assets and liabilities and to amend that information, if necessary. *See* 11 U.S.C. § 521. When a debtor signs a petition, he swears, under penalty of perjury, that the statements made in the petition, schedules, and statement of financial affairs are "true and correct." Voluntary Petition for Individuals Filing for Bankruptcy, Official Form 101 at 6; *Harker v. West (In re West)*, 328 B.R. 736, 749 (Bankr. S.D. Ohio 2004) (citing *Hamo v. Wilson (In re Hamo),* 233 B.R. 718, 725 (B.A.P. 6th Cir. 1999)). The Code also requires a debtor to produce certain documentation at or before the § 341 meeting and to cooperate with the case trustee. 11 U.S.C. § 521. Complying with these duties does not require sophisticated legal knowledge or skill, especially for a debtor who has previously filed for bankruptcy relief. It simply required the Debtor to provide accurate information on his bankruptcy petition and schedules and to produce certain documents for the Chapter 7 Trustee's review. His *pro se* status did not relieve him of these duties in his current case or any of his previous ones.

A debtor's *pro se* status also does not excuse a lack of good faith in a bankruptcy proceeding. *Cusano*, 431 B.R. at 736. In granting the motions to dismiss in this case, the bankruptcy court provided 13 examples of the Debtor's bad faith. Ten of these concerned the Debtor's behavior in his current case. Only three referenced his actions in his previous cases.

Finally, the only factual error Debtor identifies is his assertion that he has never tried to frustrate the foreclosure of the Gideon Lane Property. Rather, he posits that he and Ms. Riddle were the victims of criminal misdeeds by Wells Fargo's foreclosure attorneys. (Appellant Br. at 2-3.) He asserts that he has a cause of action against these attorneys currently pending in the Ohio state court system. (*Id.* at 3.) The Debtor did not present any proof of these allegations to the bankruptcy court, nor did he disclose any such claims on his chapter 7 petition. Having failed to advance any of these arguments in the bankruptcy court, he has waived his right to raise them in this appeal. *Daniel v. AMCI, Inc. (In re Ferncrest Court Partners, Ltd.)*, 66 F.3d 778, 782 (6th Cir. 1995).

The bankruptcy court is very familiar with the Debtor and his actions in this and his prior bankruptcy cases. The court accurately interpreted the law relating to dismissal under 11 U.S.C. § 707(a) and stated the factual basis for its decision. Nothing in the court's Opinion indicates that the court misconstrued the facts of this case or improperly considered the Debtor's previous

filings. The bankruptcy court clearly looked at this case with "fresh eyes" and determined that the Debtor lacked good faith in his current case. The bankruptcy court did not abuse its discretion in dismissing the Debtors' case pursuant to 11 U.S.C. § 707(a).

## II.      11 U.S.C. §§ 105(a) & 349(a)

The second issue in this appeal is whether the bankruptcy court erred in dismissing the Debtor's case with a three-year bar to refiling pursuant to 11 U.S.C. §§ 105(a) and 349(a). Section 105(a) of the Bankruptcy Code provides that a "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Section 349(a) provides:

> Unless the court, for cause, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(g) of this title.

11 U.S.C.§ 349(a). The Sixth Circuit Bankruptcy Appellate Panel has previously held, "[w]here there is sufficient cause, bankruptcy courts have the authority pursuant to 11 U.S.C. §§ 105(a) and 349(a) to prohibit bankruptcy filings in excess of 180 days." *Cusano*, 431 B.R. at 737 (citing *Dietrich v. Nob-Hill Stadium Props.*, No. 05-2255, 2007 WL 579547, at *5 (6th Cir. Feb. 15, 2007)).

In *Cusano*, the bankruptcy court granted a debtor's motion to voluntarily dismiss his chapter 13 case; however, in so doing, the court imposed a two-year bar on refiling pursuant to 11 U.S.C. §§ 105(a) and 349(a). Although the bankruptcy court found that the debtor had a right to dismiss his case under 11 U.S.C. § 1307, it also found that the debtor's bad faith in his prior filings and in his current case warranted the imposition of such a sanction. *Cusano,* 431 B.R. at 733. The Bankruptcy Appellate Panel affirmed.

At issue in *Cusano* was a state court lawsuit the debtor had brought against various members of the rock band KISS for royalties he asserted were owed him. Prior to the filing of the debtor's first bankruptcy case, a California state court had dismissed the debtor's claims against the band members and awarded them a judgment against the debtor for attorney's fees

and costs. The judgment led to a number of appeals in the Ninth Circuit and to several proceedings in which the defendants sought to collect on their judgment. The debtor then began a pattern of filing and voluntarily dismissing bankruptcy petitions under chapter 7 and chapter 13 of the Bankruptcy Code.

The bankruptcy court conducted a trial and concluded "that the Debtor had acted, and continued to act, in bad faith[.]" *Id.* The court cited a number of factors in support of its "bad faith" conclusion, including the debtor's pattern of filing bankruptcy petitions to stop collection of the state court judgment.

> The Debtor has rushed litigation repeatedly in this Court when it suits his purpose to avoid resolution of the Ninth Circuit proceedings and delayed litigation when it does not suit his purpose to avoid resolution of the Ninth Circuit proceedings. The Debtor now again seeks voluntary dismissal of his Chapter 13 Petition without conditions. It is clear to this Court that a newly filed Chapter 13 case will end up in a procedural posture similar to this case if the Ninth Circuit litigation has not been concluded. The Debtor believes his Ninth Circuit litigation against [the Appellees] has merit. The Ninth Circuit Court of Appeals and the District Court for the Central District of California should have an opportunity to resolve completely the litigation between the Debtor and the [Appellees].

*Id.* at 735–36 (quoting bankruptcy court order). Based on this finding, the Bankruptcy Appellate Panel concluded that the bankruptcy court did not abuse its discretion in imposing the two-year bar to refiling. *Id.* at 737.

Courts have concluded that a dismissal with a lengthy bar to refiling is appropriate in cases similar to the one before the Panel. "A bankruptcy court's finding of bad faith, or an abuse of the bankruptcy process, particularly in the case of serial filers, is generally considered sufficient cause to impose a bar to refiling for more than 180 days." *In re Mehlhose*, 469 B.R. 694, 712 (Bankr. E.D. Mich. 2012). When one of the factors indicative of bad faith is a serial debtor's use of the bankruptcy system to forestall state court litigation, courts sometime find cause to dismiss with a bar in excess of 180 days. *See*, *e.g.*, *Cusano*, 431 B.R. at 737-38; *see also In re Cline*, 474 B.R. 789, 2012 WL 1957935, at *8 (B.A.P. 6th Cir. 2012) (unpublished table decision) (concluding bankruptcy court did not abuse its discretion in imposing two-year refiling bar based on debtor's failure to make mortgage payments for approximately five years, and finding that debtor had "systematically thwarted mortgage holders' efforts to pursue their

non bankruptcy remedies as to their collateral."); *In re Casse*, 219 B.R. 657, 661 (Bankr. E.D.N.Y. 1998) ("Although filing for bankruptcy on the eve of foreclosure is not *per se* bad faith, the Debtor's penchant for repeatedly doing so can be considered as evidence of bad faith[.]" (internal citations omitted)).

Courts also find cause for dismissal with an extended bar on refiling "based on a finding of bad faith resulting from a debtor's egregious behavior." *In re Nixon*, No. 05-12169, 2005 WL 4041163, at *1 (Bankr. S.D. Ohio May 18, 2005) (finding serial filer's failure to offer any "reason for her multiple filings" or any "evidence of a change in circumstances" to be egregious behavior); *In re Johnson*, 281 B.R. 269, 271 (Bankr. W.D. Ky. 2002) (granting motion to dismiss with prejudice and a six-year bar from refiling, concluding a 180-day bar was insufficient because the debtor's conduct in the case was "particularly egregious as she blatantly spent property of the estate, post-petition, after the Trustee notified her in writing of the duty to provide the Trustee with the money.").

As reviewed above, the bankruptcy court found that (a) the Debtor's behavior in this case mirrored his behavior in his 2011 case, which was denied without a discharge; (b) the Debtor filed his 2018 and 2019 bankruptcy cases to stop his eviction from the Gideon Lane Property; and (c) the Debtor's stated purpose in filing this case was improper. The bankruptcy court clearly acted within its discretion in ordering an extended bar under the uncontroverted facts.

Debtor argues, however, that the bankruptcy court "unjustly, reconsidered reasons and events which was [sic] already used to determine a prior 3-year ban. [sic] Without looking at current events with fresh eyes." (Appellant Br. at 7.) The Panel finds the Debtor's argument without merit. The bankruptcy court's reasoning in the present case is not without precedent. Courts have considered a debtor's prior actions as part of the reason to impose an additional bar on the same debtor. In so doing, these courts specifically recognized that prior bans had not been effective in curbing a debtor's continuing abuse of the bankruptcy system. *See*, *e.g.*, *In re Via*, Case No. 3:19-bk-33999-SHB, 2020 WL 1015264 (Bankr. E.D. Tenn. Feb. 27, 2020) (imposing a five-year bar after finding that debtor did not learn from prior two-year bar); *In re Price*, 304 B.R. 769 (Bankr. N.D. Ohio 2004) (finding that debtors had not been deterred from their abusive conduct by prior bans on refiling and imposing one-year bar); *In re Freeman*, 224 B.R.

376 (Bankr. S.D. Ohio 1998) (imposing permanent bar against future bankruptcy filings where *pro se* debtors were not deterred from their abusive filings despite court having repeatedly restricted their ability to file another case).

As the Supreme Court recognized in *United States v. Kras*, 409 U.S. 434, 446, 93 S. Ct. 631 (1973), a discharge in bankruptcy is not a constitutional right. It is a privilege reserved for the "honest, but unfortunate debtor." *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367, 127 S. Ct. 1105 (2007) (citing *Grogan v. Garner*, 498 U.S. 279, 286, 111 S. Ct. 654 (1991)). The bankruptcy court did not abuse its discretion in determining that this Debtor did not fall into that class of individuals and should be prevented from refiling bankruptcy for three years. Having conducted a hearing and listened to the Debtor's testimony and arguments, the bankruptcy court was in the best position to judge the Debtor's credibility. The court specifically found that the Debtor had failed, after several warnings and opportunities, to disclose all of his assets and liabilities, lacked good faith, and was abusing the bankruptcy process with his serial filings. As the bankruptcy court recognized, there was no relief the court could provide to the Debtor given the status of his foreclosure and divorce proceedings. The Debtor filed a bankruptcy petition for an improper purpose, and the court found that the prior dismissal with a bar had not effected any change on the Debtor's behavior. He continued to misuse the bankruptcy process. A bar on refiling is appropriate to prevent future misuse of the bankruptcy system, and the bankruptcy court did not abuse its discretion in imposing a three-year bar at the US Trustee's request.

## CONCLUSION

The Panel concludes that the bankruptcy court did not abuse its discretion in dismissing the Debtor's case pursuant to 11 U.S.C. § 707(a) and prohibiting the Debtor from refiling for a period of three years pursuant to 11 U.S.C. §§ 105(a) and 349(a). As such, the bankruptcy court's order is affirmed.